No. 30,437.

FRED G. PARR, Administrator of the Estate of Ernest D. Parr, Deceased, *Appellant*, v. LILLIAN M. YOUNG et al., *Appellees.*

(11 P. 2d 696.)

Opinion filed June 4, 1932.

*H. Ward Page, W. Glenn Hamilton* and *Ira Burkholder,* all of Topeka, for the appellant.

*J. J. Schenck* and *C. P. Schenck,* both of Topeka, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by the administrator of the estate of Ernest D. Parr, deceased, to set aside a gift of money and property made by the decedent, shortly before his death, to Lillian M. Young. The court found generally and specially for defendant, and rendered judgment accordingly. Plaintiff appeals, and raises two questions: first, the gift was not completed by delivery, and second, the donor ought to have had independent advice.

In his lifetime Ernest Parr was engaged in the business of billboard advertising, and had an office in the city of Topeka. For several years previous to his death he suffered from poor health. He gradually grew worse and in May, 1930, he went to a hospital. After a period of observation and treatment, he was advised an operation was necessary. While getting into condition for the operation, he said he had but one chance in a thousand to get well, but he had suffered all he could, and was willing to take the chance. The operation was performed on June 4. On June 5 he died.

Lillian M. Young, with her sister, conducted a beauty parlor in the city of Topeka. Of evenings and on Sundays and holidays and at some other times, she acted as bookkeeper for Ernest Parr, and performed other business services for him. Plaintiff's attorneys say she was Ernest Parr's private, confidential secretary, and general agent. The district court did not so find, and this court cannot

determine the precise nature and extent of the relations, because the court does not know how much of the testimony for plaintiff the district court disbelieved. Confidential relations vary innumerably in scope and degree. Assuming Lillian Young did bear a confidential relation to decedent, and that the burden rested on her to establish the gift, she discharged the burden to the full satisfaction of the district court.

For several years previous to his death Ernest Parr and Lillian Young were engaged to be married. They were devoted to each other, made plans to be married when his health would permit, and they hoped to be married early in July, 1930.

In September, 1929, Ernest Parr took out two policies of life insurance, one for $3,000, and one for $1,000, which were payable to Lillian Young, fiancée. A few months before his death Ernest Parr arranged for change of a joint certificate of Cities Service stock to individual ownership, so that, as he stated, if anything happened to him, Miss Young would have no trouble about it.

The gifts, if consummated, consisted of two checks, one for $1,022.25, on Ernest Parr's personal account, and one for $2,000 on his business account in the Farmers National Bank of Topeka; a certificate for shares of the Capitol Building and Loan Association of Topeka to the amount of $2,000; and five certificates for seventeen shares of common and two shares of preferred stock of Cities Service Company. The Cities Service stock was valued, at the time of his death, at $600. The court made the following findings of fact:

"The court, after due consideration of the evidence in this case and being fully advised in the premises, finds for the defendant and against the plaintiff on all the issues in this case.

"The court further finds that Ernest D. Parr, at the time of the gifts of the property to the defendant, was in the full and perfect possession of all his mental faculties, and at the time he executed the two checks on the Farmers National Bank payable to the defendant Lillian M. Young, and at the time he executed the assignment of the shares of stock in the Capitol Building and Loan Association and the shares of stock in the Cities Service Company, which have been introduced in evidence in this case, the said Ernest Parr was in the full possession of all his mental faculties, and that said checks and shares of stock were duly delivered by the said Ernest Parr to the said Lillian M. Young, and that the said Lillian M. Young thereupon became and was at the time of the death of said Ernest Parr the absolute owner of the money represented by the two checks on the Farmers National Bank, and was the absolute owner of the shares of stock in the Capitol Building and Loan Association, and the shares of stock in the Cities Service Company.

"The court further finds from the evidence in this case that the said Fred Parr, administrator of the estate of Ernest D. Parr, deceased, had no right, title or interest in or to . . . any of the said property at the time of the death of Ernest D. Parr, or at the time of the commencement of this suit, or at any other time.

"The court further finds that the said Ernest D. Parr was not unduly influenced at the time of the gifts of the checks and shares of stock as hereinbefore stated, but the giving of the same to the defendant herein by the said Ernest D. Parr was his free and voluntary act."

Ernest Parr was a patient at the Security Benefit Association hospital, located some distance west of the corporate limits of the city of Topeka. His recovery was doubtful. He was a fairly successful business man. The court's findings that he was in full possession of his mental faculties, was under no restraint, and acted freely and voluntarily, are not questioned. His disposition and desire, in case of death, to make financial provision for the woman to whom he had been long engaged, and whom he would soon marry if he recovered, has been indicated.

In the forenoon of May 31 Ernest Parr came into the city of Topeka, went to the Masonic Temple and there revoked a Masonic will which would have vested all his property in his estate, and consequently in his heirs at law. He said he had everything arranged the way he wanted it, and he did not care to leave a will.

After revoking his will, and in the forenoon of the same day, Ernest Parr went to the beauty parlor. When he appeared, Miss Young said, "Why, Ernest, what are you doing here?" He took some folded legal-size papers from his pocket, and said he came up town to cancel the will and to have the papers taken care of, so that if anything happened, she would be well taken care of. He said he wanted to see her, and wanted to straighten up everything, so that if anything happened to him, everything would be taken care of for her. Ernest Parr and Miss Young then stepped into a room where they were alone. Soon afterward he went away.

About noon of the same day Miss Young appeared at the Cities Service office in Topeka with the five share certificates in her possession, and she asked that they be transferred to her. She was told it would be necessary for Ernest Parr to execute the blank assignments on the backs of the certificates, and that his signature should be witnessed. She took the certificates away with her.

On the same day Miss Young appeared at the office of the Capitol Building and Loan Association, with the certificate of building and

loan shares, and asked that the certificate be transferred to her. She was told by the assistant secretary of the association it was necessary for Ernest Parr to execute the assignment on the back of the certificate. The assistant secretary filled the blanks, and checked the place where Ernest Parr was to sign.

On June 3, Miss Young returned to the office of the building and loan association, and presented the certificate for transfer. The assignment then bore the signature of Ernest Parr. The assignment was approved, the certificate was canceled, and a new certificate was issued to Lillian M. Young. When introduced in evidence, the indorsement on the back of the old certificate appeared as follows:

"For value received, I hereby sell, assign and transfer unto Lillian M. Young the shares represented by this certificate, and authorize the secretary to transfer such shares on the books of the association.

"Dated ———, 1930.                                    E. D. PARR, *Shareholder.*

"Approved June 3, 1930: ROY McCUE, *Assistant Secretary.*"

On June 3 the certificates of Cities Service shares were at the hospital on the bed in Ernest Parr's room. Miss Young called Mary Melchior, general floor nurse of the hospital, into the room, and Ernest Parr asked Miss Melchior to witness his signature. He signed the papers, and she witnessed the signatures. The assignments were on the backs of the certificates, the written portions were in Ernest Parr's handwriting, and as signed by him and witnessed by Miss Melchior, one of them, when offered in evidence, appeared as follows:

"For value received, I hereby sell, assign and transfer unto Lillian M. Young, five shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ——— attorney, to transfer the said stock on the books of the within-named company, with full power of substitution in the premises.

"Dated June 3, 1930.                                    ERNEST D. PARR.

"In presence of Mary Melchior."

The assigned certificates were presented for transfer, and the transfer was made on June 13.

The checks were not dated, but were in the handwriting of Ernest Parr. Ernest Parr and Miss Young sometimes took meals at the Edward Johnson restaurant. Edward Johnson would inquire after Ernest Parr's health, and after Ernest Parr went to the hospital, Edward Johnson talked to him. Ernest Parr said he guessed the only way was to have an operation. Two or three days before the operation was performed, Miss Young was in the restaurant. On

that occasion she had the checks in her possession. On June 2 she appeared at the Farmers National Bank, had the checks in her possession, and cashed them. She had a conversation with the president of the bank, and on his advice the proceeds of the checks were deposited in two accounts, "Lillian Young, Trustee," and "Lillian Young, Guardian."

Witnesses were permitted to testify, over objection, that in connection with the transactions at the Cities Service office and at the building and loan association office, Lillian Young explained how she came to have the certificates; and that in connection with the transaction at the bank, she explained how she came to have the checks. The testimony was admitted with the understanding the court would rule later. The court made the following finding:

"The court further finds that in the absence of the testimony of these witnesses, the defendant has proven by a preponderance of the evidence that the checks and certificates of stock were duly delivered to the defendant by the said Ernest D. Parr, and that said delivery was the free and voluntary act of the said Ernest D. Parr, and was free from any undue influence."

There was testimony, properly admitted, which has not been referred to, which would materially aid in sustaining the findings of fact. One illuminating bit of testimony was that of Miss Young that she first saw the certificate of building and loan association shares at the beauty parlor. Such testimony may be left at one side; and without debating the evidence embraced in the stark narrative appearing above, and without discussing the very many authorities cited by counsel for the respective parties, the court holds as follows: The evidence warrants an inference of fact that Ernest Parr delivered the checks and share certificates to Lillian M. Young; no other reasonable inference could be drawn; no rule of law forbids the inference; and the contention that the gift failed because it was not proved Ernest Parr had independent advice before making it, is without merit.

The judgment of the district court is affirmed.

SLOAN, J., not sitting.